**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

DAE Aviation Enterprises,
Corp. d/b/a Emerson Aviation

  v.          Civil No. 11-cv-554-LM
               Opinion No. 2012 DNH 152
Old Republic Insurance Company;
Phoenix Aviation Managers, Inc.;
Nationair Insurance Agencies, Inc.;
and Tracy N. Cardelli, Individually,
and as Personal Representative of
the Estate of Stephen D. Cardelli, Jr.


**O R D E R**

   In an action that has been removed from the New Hampshire
Superior Court, DAE Aviation Enterprises, Corp. ("DAE")
petitions for a declaratory judgment concerning the extent of
its coverage under an insurance policy sold to it by Nationair
Insurance Agencies, Inc. ("Nationair"), issued by Old Republic
Insurance Company ("Old Republic"), and underwritten by Phoenix
Aviation Managers, Inc. ("Phoenix").[1]  Before the court are
motions for summary judgment filed by: (1) Tracy Cardelli
("Cardelli"), whose claim against DAE brought DAE's insurance
policy into play; (2) DAE; and (3) Old Republic and Phoenix

---

   [1] DAE's petition also includes, as Count II, a "contingent
damages claim" in negligence against Nationair.  As the court
understands DAE's pleading, Count II will spring to life if the
court declares that DAE's policy affords less coverage than was
required by the airport at which DAE operated its business.

(referred to collectively as "the insurers").  All three motions are duly opposed.  For the reasons that follow, each of the three motions is granted in part and denied in part.

## Summary Judgment Standard

"To prevail on summary judgment, the moving party must show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 29 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Where, as here, the court is presented with cross motions for summary judgment, the summary-judgment standard is applied to each motion separately.  See Am. Home Assur. Co. v. AGM Marine Contrs., Inc., 467 F.3d 810, 812 (1st Cir. 2006) (citing Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997)).  In other words, "[t]he presence of cross-motions for summary judgment neither dilutes nor distorts [the] standard of review."  Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006).

## Background

Stephen Cardelli ("Mr. Cardelli") died on June 13, 2009, when the plane he was piloting lost power and crashed just after take-off, about a mile from the Laconia Municipal Airport ("Laconia Airport").  The power loss resulted from a leak that caused the plane's engine to lose virtually all of its oil.

Shortly before the crash, Mr. Cardelli had gotten the plane back from DAE.  DAE is a "fixed-base operator," or FBO which provides, among other things, aircraft maintenance at Laconia Airport.  Prior to Mr. Cardelli's crash, DAE had performed an annual inspection of his plane that included an oil and filter change.  DAE also performed some other repair work, including a windshield replacement.

The windshield was replaced on June 12.  At that time, a DAE mechanic told Mr. Cardelli that the plane would not be available until late in the afternoon of June 13, because the material used to seal the windshield needed twenty-four hours to cure, and it was necessary for the sealant to cure before DAE could perform an engine run-up.  A run-up is required after any oil change, and had a run-up been performed, the mechanic performing it would have detected the oil leak that caused Mr. Cardelli's plane to crash.

On June 13, Mr. Cardelli went to pick up the plane, arriving before the end of the twenty-four cure period for the windshield sealant.  When a DAE employee was unable to tell Mr. Cardelli where the plane was, Mr. Cardelli went into a hanger and found it.  He also went into an office and took the plane's log books, which contained entries indicating that all the work on the plane, including a run-up, had been completed.  Mr. Cardelli then had a low-level DAE employee get the plane out of

the hangar for him.  Thereafter, he taxied away, leaking oil onto the runway, and took off on his fatal flight.

Mr. Cardelli's surviving spouse, who is also the personal representative of his estate, has sued DAE in the United States District Court for the District of Maine.  Among her claims is one for negligence against DAE.  Specifically, she asserts that DAE breached its duty of care by: (1) gouging the oil-cooler return hose and fracturing the oil-cooler return-line-attach nipple; (2) failing to perform the required run-up; (3) releasing the plane to Mr. Cardelli before performing the run-up; (4) failing to take steps, such as taping the plane's doors and fuselage, to indicate that the plane had not been made airworthy; and (5) violating various federal regulations governing aircraft service and inspection.

DAE's operations at Laconia Airport were governed by an FBO Operating Contract between DAE and the Laconia Airport Authority ("LAA").  Article VI of that contract required DAE to carry commercial general liability insurance and to provide the LAA with a Certificate of Insurance "naming the LAA, the City of Laconia, the Town of Gilford, and the County of Belknap as Additional Insureds hereunder."  Resp't's Mot. Summ. J., Ex. D (doc. no. 37-3), at 3.  Article VI further provides:

> The coverage available to the LAA, the City of Laconia, the Town of Gilford, and the County of Belknap as Additional Insured, shall not be less than

4

a $2,000,000 <u>Smooth Limit</u> with respect to Premises-
Operations . . . provided that such coverage is
commercially available; a $2,000,000 <u>Smooth Limit</u> with
respect to Products-Completed Operations arising out
of the servicing or sale of fuel, oil and other
petroleum products, provided that such coverage is
commercially available; and a $1,000,000 Per
Occurrence limit with a $100,000 Per Person Bodily
Injury Sub-Limit with respect to all other Products-
completed Operation exposure (i.e. Repair & Service,
Pilot Supplies, Food & Beverage Sales, etc.), provided
that such coverage is commercially available.  <u>Smooth</u>
<u>Limit</u> is defined as a distinct limit of liability
coverage per occurrence with no sub-limit for bodily
injury to any person.

<u>Id.</u> Article VI also gave the LAA the discretion to require DAE

to maintain commercial umbrella liability insurance with a

coverage limit of at least $1 million per occurrence.  <u>See</u> <u>id.</u>

There is no indication that the LAA ever required DAE to obtain

or maintain an umbrella policy.

At the time of Mr. Cardelli's fatal accident, DAE was

covered by a policy of airport liability insurance that was

issued by Old Republic and underwritten by Phoenix.  The

policy's "Comprehensive General Liability Insurance – Coverage

Part" recites that the "policy provides coverage to owners,

landlords and tenants of property and operations located on the

premises designated in the declarations of this policy as an

airport including all operations necessary and incidental

thereto."  Resp't's Mot. Summ. J., Ex. E (doc. no. 37-4), at 36.

More specifically, under the policy, Old Republic is obligated

to pay on behalf of the "insured" all sums that the "insured"
shall become legally obligated to pay as "damages" because of

       A. "bodily injury" or

       B. "property damage"

to which this insurance applies, as caused by an
"occurrence" . . .

Id.  The policy's declarations page lists five "Coverage Parts."
They include: (1) hangarkeepers' liability insurance; (2)
completed operations and/or products liability insurance; (3)
comprehensive general liability insurance; (4) premises medical
payments insurance; and (5) other liability insurance.  Id. at
2.

On a page titled "Comprehensive General Liability Insurance
– Schedule" (hereinafter "schedule page"), the policy describes
five "General Liability Hazards," several of which include sub-
parts, and two of which are potentially implicated by the facts
of this case:

    (a)   Premises - Operations
        Named Insured's aviation operations located at
        Laconia Municipal Airport; Laconia, NH . . . and
        any location necessary and incidental to the
        aviation operations of the Named Insured.

        . . .

    (d)   Completed Operations
        Aircraft Repairs & Services
        Servicing of Fuel, Oil and Other Petroleum
        Products Only

Resp't's Mot. Summ. J., Ex. E (doc. no. 37-4), at 5.  To
clarify, the policy identifies <u>three</u> potentially relevant
hazards: (1) premises-operations; (2) completed operations
(repair); and (3) completed operations (petroleum only).  The
policy also describes a hazard labeled "Products," which
includes the sale of: (1) fuel, oil, and other petroleum
products only; (2) used aircraft; (3) new aircraft; (4) aircraft
parts not installed; and (5) pilot supplies.  <u>See</u> <u>id.</u>

     The description of the premises-operations hazard quoted
above is all the policy has to say about the nature of that
hazard.  Regarding what qualifies as a completed-operations
hazard, the policy's definitions section provides, in pertinent
part:

> "completed operations hazard" includes "bodily injury"
> and "property damage" arising out of operations or
> reliance upon a representation or warranty made at any
> time with respect thereto, but only if the "bodily
> injury" or "property damage" occurs after such
> operations have been completed or abandoned and occurs
> away from premises owned by or rented to the "named
> insured".  "Operations" include materials, parts, or
> equipment furnished in connection therewith.

Resp't's Mot. Summ. J., Ex. E (doc. no. 37-4), at 44.

     Each of the three hazards identified above has a coverage
limit.  With respect to the premises-operations hazard only, a
single-limit endorsement provides, in pertinent part:

> The total liability of [Old Republic] for all damages
> sustained by any person . . . because of bodily injury

to any one person as the result of any one occurrence
shall not exceed $2,000,000.

The total liability of [Old Republic] for all damages
because of Property Damage . . . as a result of any
one occurrence shall not exceed $2,000,000.

Subject to the above, the total liability of the
company for all damages because of all bodily injury
and all property damage . . . as a result of any one
occurrence shall not exceed $2,000,000.

Resp't's Mot. Summ. J., Ex. E (doc. no. 37-4), at 8.  With

respect to the completed-operations (repair) and products (non-

petroleum) hazards only, a single-limit endorsement provides, in

pertinent part:

The total liability of [Old Republic] for all damages
sustained by any person . . . because of bodily injury
to any one person as the result of any one occurrence
shall not exceed $100,000.

The total liability of [Old Republic] for all damages
because of Property Damage . . . as a result of any
one occurrence shall not exceed $1,000,000.

Subject to the above, the total liability of [Old
Republic] for all damages because of all bodily injury
and all property damage . . . as a result of any one
occurrence shall not exceed $1,000,000.

Id. at 7.  With respect to the completed-operations (petroleum

only) and products (petroleum only) hazards, a single-limit

endorsement provides, in pertinent part:

The total liability of [Old Republic] for all damages
sustained by any person . . . because of bodily injury
to any one person as the result of any one occurrence
shall not exceed $1,000,000.

> The total liability of [Old Republic] for all damages
> because of Property Damage . . . as a result of any
> one occurrence shall not exceed $1,000,000.
>
> Subject to the above, the total liability of [Old
> Republic] for all damages because of all bodily injury
> and all property damage . . . as a result of any
> occurrence shall not exceed $1,000,000.

Id. at 9.

Phoenix gave the LAA a Certificate of Insurance ("Certificate"), as required by the FBO Operating Contract. The Certificate lists the following limits of liability: (1) comprehensive general liability, $2 million for each occurrence; (2) completed-operations and product liability, $1 million for each occurrence; and (3) completed-operations and product liability (petroleum only), $1 million for each occurrence. Resp't's Mot. Summ. J., Ex. E (doc. no. 37-4), at 1. Those per-occurrence limits of liability are the same as those listed in the policy's single-limit endorsements. For each category of liability listed in the Certificate, the line asking for per-person limits was left blank. Thus, the Certificate makes no affirmative representation as to the policy's per-person liability limits. The Certificate also states: "This Certificate does not change in any way the actual coverages provided by the policy(ies) specified above." Id.

After her husband's death, Cardelli, through counsel, contacted Phoenix. Cardelli took "the position that the subject

policy's Premises-Operations hazard and its corresponding
$2,000,000 'per person' limit of liability should apply to the
subject claim."  Resp't's Mot. Summ. J., Ex. F (doc. no. 37-5),
at 1.  Phoenix took the position that DAE's coverage was capped
by the $100,000-per-person limit applicable to the completed-
operations (repair) hazard.  It also stated that "[t]he
$1,000,000 'per person' limit of liability applicable to the
Completed Operations hazard – Servicing of Fuel, Oil and Other
Petroleum Products – is inapplicable under the facts as we
understand them."  Id. at 6 n.1.

       This action followed.  Pursuant section 491:22 of the New
Hampshire Revised Statutes Annotated ("RSA"), DAE seeks
declarations that it is entitled to: (1) up to $1 million in
coverage for bodily injury and property damage resulting from a
completed-operations (petroleum only) hazard; (2) up to $2
million in coverage for bodily injury and property damage
resulting from a premises-operations hazard; and (3) another $2
million in "other liability" coverage.  It also asks the court
to declare that the Certificate of Insurance Phoenix gave the
LAA is the legal equivalent of an endorsement to the policy, and
trumps any contrary provisions in the policy Old Republic
issued, with the result that it is entitled to $1 million in
coverage, with no per-person limit, for bodily injury and
property damage resulting from a completed-operations (repair)

hazard.  Finally, DAE asks the court, in the event it determines
that DAE is subject to the policy limit for completed operations
(repair) rather than for completed operations (petroleum only),
to determine that the policy's definition of "completed
operations hazard" is ambiguous and to construe that definition
in favor of affording greater coverage.

In their answers to DAE's petition, Old Republic and
Phoenix each assert a counterclaim against DAE and a crossclaim
against Cardelli, arising under the federal declaratory judgment
statute, 28 U.S.C. § 2201.  In each claim, Old Republic and
Phoenix ask the court to declare that DAE's coverage is limited
to the $100,000 policy limit for completed-operations (repair)
insurance.

## Discussion

As noted, the court has before it three motions for summary
judgment.  Cardelli argues that: (1) Old Republic is required,
by state and federal law, to provide DAE with $2 million in
premises-operations coverage, $2 million in completed-operations
(petroleum only) coverage, and $1 million in coverage under an
umbrella policy; (2) DAE is entitled to at least $2 million in
coverage based on Phoenix's representation, in the Certificate
of Insurance, that DAE had $2 million in coverage for

comprehensive general liability;[2] (3) DAE is entitled to at least
$2 million in coverage because the policy's premises-operations
hazard, which has a liability limit of $2 million, is defined
ambiguously, and one reasonable reading of that provision favors
inclusion of DAE's alleged negligence within that hazard; (4)
her claims against DAE do not fall within the completed-
operations hazard; (5) if her claims do fall within the
completed-operations hazard, they fall within the petroleum-only
portion of the hazard, which has a $1-million-per-person limit
on liability; (6) even if her claims fall within the completed-
operations hazard, they also fall within the premises-operations
hazard, and DAE is entitled to coverage for both.  Based on all
of those arguments, Cardelli concludes her memorandum of law
this way:

> Here, the Court must objectively construe the
> statutory mandates at the Laconia Municipal Airport,
> the coverage provided in the policy documents, and the
> provisions calling for stacking.  This analysis
> provides total coverage for Mrs. Cardelli's claims of
> up to $5,001,000: First, there is $2 million for
> either CGL or Premises - Operations, $1,000 for
> Premises Medical Payments, and possibly Completed
> Operations coverage of either an additional $2 million
> (pursuant to the mandatory minimums) or of $1 million
> (pursuant to the policy).  Second, regardless of the
> amount in the liability policy, the umbrella policy
> provides for an additional $1 million.  For the

---

[2] Based upon the premiums listed in the policy, the court
concludes that comprehensive general liability is the policy's
coverage part associated with the premises-operations hazard.

foregoing reasons, the Court should grant this motion
for summary judgment.

Resp't's Mem. of Law (doc. no. 35), at 25-26.

DAE, in turn, argues for approximately the same amount of

coverage, but in a slightly different way:

[T]here are three applicable coverages: (1) Premises-
Operations coverage with a two million dollar smooth
limit (i.e. no sublimit) and (2) a $1,000,000 smooth
coverage under the completed operations fuel/oil
servicing provision and (3) unlimited coverage under
the "Other Liability" coverage part but the Court
should limit that to $2,000,000.

. . . .

The bodily injuries in question clearly fall
within the Premises - Operations hazard with
$2,000,000 liability coverage with no per person
sublimits.  The injuries also fall within the
completed operations coverage for an additional
$1,000,000 coverage.  Because the accident involved
oil starvation, because an oil and filter change
occurred in this case, and because an oil and filter
change would have required the full engine run-up,
shut down, and inspection by the mechanic, and because
such a run-up and inspection would have revealed the
oil leak and prevented the injuries, the completed
operations coverage for oil/fuel servicing applies and
there is no per person bodily injury sublimit.
However, if the Court decides that the other completed
operations provision applies, the Court should not
give effect to the $100,000 per person bodily injury
sublimit because the policy is convoluted and
conflicts with the Certificate of Insurance.
Therefore, the coverage in this case is $3,000,000
with no sublimits plus an additional $2,000,000 of
coverage under the "Other Liability" coverage part of
the insurance.  Therefore, the total coverage in this
case is $5,000,000 with no sublimits, plus whatever
additional med pay coverage the Court may decide the

> Cardelli estate is entitled to as per the Cardelli
> summary judgment motion.

Pet'r's Mem. of Law (doc. no. 50-1), at 5, 23-24.

The insurers contend that: (1) there is no law that prohibited Old Republic from issuing a policy with the limits on liability stated in the policy at issue in this case; (2) the Certificate of Insurance does not trump the terms of the policy; and (3) the $100,000-per-person limit of liability for completed operations (repair) applies to the claims in this case.  They conclude their memorandum of law by arguing:

> DAE and Cardelli's position is grounded upon (1)
> purported statutory constraints which do not exist,
> (2) avoidance of the language of a certificate of
> insurance compounded by an attempt to displace
> insurance policy provisions with it, (3) avoidance of
> the premises operations exclusion which expressly
> eliminates coverage with respect to such operations as
> well as "stacking" or "overlapping" of it, (4)
> avoidance of the plain language of the completed
> operations hazard definition whereby operations may be
> deemed completed notwithstanding alleged deficiencies
> in them, and (5) attempts to rewrite the plain
> language and punctuation of the completed operations
> hazard definition with respect to both its general and
> airport contexts.  These errors result from their
> failure to read the policy as an integrated whole,
> harmonizing the coverage parts, descriptions of
> hazards, premises operations exclusion, definition of
> completed operations hazard, and the respective limits
> relating thereto.

Resp't's Mem. of Law (doc. no. 51), at 24.

A. Legal Principles

Having described the parties' positions, the court turns to the relevant legal principles.  In a declaratory judgment action "to determine the coverage of a liability insurance policy, the burden of proof concerning the coverage shall be upon the insurer whether [it] institutes the petition or whether the claimant asserting the coverage institutes the petition."  RSA 491:22-a; see also Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp., 160 N.H. 690, 692 (2010).

When resolving a coverage dispute, the court's "analysis necessarily begins with an examination of the policy language." Concord General, 160 N.H. at 692 (quoting Webster v. Acadia Ins. Co., 156 N.H. 317, 319 (2007)).  When examining the language of an insurance policy, the court "construe[s] the language as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole." Concord General, 160 N.H. at 693 (quoting Webster, 156 N.H. at 319–20).  Finally, "[p]olicy terms are construed objectively; where the terms are clear and unambiguous, [the court] accord[s] the language its natural and ordinary meaning."  Concord General, 160 N.H. at 693 (quoting Webster, 156 N.H. at 320). However, "[i]f more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the

insurer." <u>MacLearn v. Commerce Ins. Co.</u>, 163 N.H. 241, 244
(2012) (quoting <u>Brickley v. Prog. N. Ins. Co.</u>, 160 N.H. 625, 627
(2010)).

    <u>B. Preliminary Matters</u>

    The court begins by clearing away some underbrush.  First,
Cardelli argues that "[i]t is well established that language in
an insurance policy cannot operate to defeat or avoid coverage
up to the minimum limits of liability required by statute."
Resp't's Mem. of Law (doc. no. 35), at 9 (citing <u>Empire Ins.</u>
<u>Cos. v. Nat'l Union Fire Ins. Co.</u>, 128 N.H. 171, 174 (1986);
<u>Merchants Mut. Ins. Co. v. Bean</u>, 119 N.H. 561, 564 (1979)).
That may be the law, but the rule Cardelli states has no
applicability here as there is no minimum limit of liability
required by statute under the circumstances of this case.  As a
part of her argument regarding legally mandated coverage,
Cardelli also asserts that DAE was obligated to obtain an
umbrella policy pursuant to the FBO Operating Contract.  That
agreement gave the LAA the discretion to require such coverage,
but there is no evidence that the LAA actually imposed that
requirement or that DAE ever purchased an umbrella policy.
Accordingly, Cardelli's argument that DAE is entitled to $1
million in coverage under an umbrella policy goes nowhere.

Second, to the extent that Cardelli relies on some discrepancy between the levels of coverage required by the FBO Operating Contract and the coverage DAE actually had, it is not at all clear that there is any legal basis for Cardelli's reliance on that agreement, given that she is not a party to it. In any event, the fact that the LAA allowed DAE to operate tends to suggest that the LAA, which was a party to the FBO Operating Contract, found DAE's insurance coverage to be sufficient.

Third, as much as Cardelli would like the Certificate of Insurance that Phoenix gave the LAA to be part of the policy Old Republic issued to DAE, it is not.  The insurers rely on Handley v. Providence Mutual Fire Insurance Co., 153 N.H. 340 (2006), for the proposition that the Certificate does not provide DAE with any more coverage than is provided by the policy.  Cardelli argues that Handley stands for the opposite proposition, i.e., that an insurer can be held liable for representations made in a certificate of insurance.  Handley provides no support for Cardelli's position.  In Handley, a contractor who received a certificate of insurance showing that one of his subcontractors was insured was permitted to sue the insurance company and one of its agents for negligent misrepresentation after learning that the subcontractor did not, in fact, have insurance.  See id. at 340, 343.  Here, of course, unlike the plaintiff in Handley, neither DAE nor Cardelli was a holder of the

Certificate of Insurance.  Thus, the <u>Handley</u> plaintiff's right
to a cause of action based on representations made in a
certificate of insurance stands on a completely different
footing from Cardelli's attempt to rely on the Certificate in
this case.  Suffice it to say that the Certificate Phoenix gave
the LAA is not a part of the contract between Old Republic and
DAE.

Fourth, there is no merit to DAE's suggestion that the
Certificate entitles it to as much as $1 million per person in
completed-operations (repair) coverage.  As the court has
already stated, the Certificate does not trump the policy and
expressly states that it does not.  Beyond that, even if the
Certificate did trump the policy, it neither conflicts with the
policy nor contains a $1-million-per-person limit for completed-
operations (repair) coverage; the line for reporting a per-
person limit on liability is blank.  Moreover, the court notes
that: (1) the Certificate appears to have been produced to meet
the requirements of Article VI of the FBO Operating Contract;
and (2) with respect to completed-operations (repair) coverage,
Article VI requires only "a $100,000 Per Person Bodily Injury
Sub-Limit," Resp't's Mot. Summ. J., Ex. D (doc. no. 37-3), at 3.

Finally, there is no merit to DAE's argument that it is
entitled to unlimited coverage under the "other liability"
coverage part listed on the declarations page.  Leaving aside

the rather fanciful notion that a $500 premium could purchase unlimited coverage for an undefined range of hazards, inspection of the policy demonstrates the "other liability" coverage referred to on the declarations page is, in fact, on-premises automobile coverage, with limits of $100,000 per person and $300,000 per occurrence.  See Resp't's Mot. Summ. J., Ex. E (doc. no.  37-4), at 24.  Because Cardelli's claims against DAE do not involve any injuries associated with automobiles, the policy's "other liability" coverage is not available to satisfy Cardelli's claim against DAE.

With the foregoing arguments out of the way, the question before the court is which of the various coverages in the policy Old Republic issued to DAE are available to satisfy Cardelli's claim against DAE.  Three are in the running: (1) comprehensive general liability insurance, which provides coverage for premises-operations hazards; (2) completed-operations (repair) coverage; and (3) completed-operations (petroleum only) coverage.  The insurers argue that the only coverage implicated by the loss in this case is completed-operations (repair) coverage.  DAE argues that this case involves both a premises-operations hazard and a completed-operations (petroleum only) hazard, and that it is entitled to coverage for both.  As part of a strategy that is somewhat difficult to follow, Cardelli

devotes more than five pages of her memorandum of law to a
detailed argument that her claims against DAE do not fall within
the completed-operations hazard,[3] but later, she asks the court
to declare that DAE is entitled to $1 million in completed-
operations coverage for her claims.  Given Cardelli's argument
for completed-operations coverage, at the conclusion of her
memorandum, the court disregards her earlier argument that there
are no completed operations in this case.  That said, the court
begins with the question of whether both premises-operations
coverage and completed-operations coverage may be available to
cover Cardelli's claim against DAE, and then turns to each of
those two coverages individually.

C. Multiple Coverages

In his letter to Cardelli's counsel, Phoenix's Claims
Manager, Patrick Dolan, explained Phoenix's view of the
relationship between premises-operations coverage and completed-
operations coverage:

---

[3] She goes so far as to argue that "the Court should
construe the policy in favor of DAE and find that operations
were not complete."  Resp't's Mem. of Law (doc. no. 35), at 20.
Finding that operations were not complete would mean that DAE is
not entitled to completed-operations coverage, which would be a
construction favorable to DAE only if a lack of coverage for
completed operations would, necessarily, require premises-
operations coverage, with its higher per-person coverage limit.
But, by asking the court to declare that DAE is entitled to both
types of coverage, Cardelli seems to walk away from the idea
that the two coverages are mutually exclusive.

> The Premises-Operations hazard encompasses the
> insured's aviation operations at the Laconia Municipal
> Airport . . . .  Although the phrase 'premises-
> operations' is not defined by the policy, it can
> fairly be construed to encompass injuries or damages
> sustained on the insured premises as a result of the
> insured's operations on those premises.  Thus, if
> injury or damage occurs on the insured premises during
> or as a result of the insured's operations, the
> premises-operations hazard is implicated.  The
> Completed Operations hazard, by comparison, applies to
> injuries or damages that occur away from the insured
> premises after the insured's operations are "deemed
> completed."

Resp't's Mot. Summ. J., Ex. F (doc. no. 37-5), at 6-7.

While the phrase "premises-operations" is not given an

entry in the policy's definitions section, it is described on

the schedule page to mean the "Named insured's aviation

operations located at Laconia Municipal Airport . . .  and any

location necessary and incidental to the aviation operations of

the Named Insured."  Resp't's Mot. Summ. J., Ex. E (doc. no. 37-

4), at 5.  That description cannot fairly be construed as

limiting the premises-operations hazard to injuries occurring on

the insured premises.  The policy is silent as to the location

of the injury; it speaks only to the location of the operations

giving rise to the injury.  Moreover, while the policy does not

say anything about the location of the injury in the context of

the premises-operations hazard, Old Republic was certainly aware

of the issue, as the definition of the completed-operations

hazard requires the covered bodily injury or property damage to

"occur[ ] away from the premises owned by or rented to the
'named insured'."  Resp't's Mot. Summ. J., Ex. E (doc. no. 37-
4), at 44.  If Old Republic had intended to limit premises-
operations coverage to injuries occurring on the premises owned
by or rented to DAE, is surely could have said so, but it did
not.  In other words, there is no support for Dolan's position
in the language of the policy.  See Concord General, 160 N.H. at
692 (explaining that the court's "analysis necessarily begins
with an examination of the policy language").

In their objection to Cardelli's motion for summary
judgment, the insurers elaborated on the argument advanced in
Dolan's letter:

> The Premises-Operations hazard encompasses the
> insured's aviation operations at the Laconia Municipal
> Airport . . . .  This hazard encompasses injuries or
> damage sustained on the insured premises as a result
> of the insured's operations on those premises.  Thus,
> if injury or damage occurs on the insured premises
> during or as a result of the insured's operations, the
> premises-operations hazard is implicated.  This
> interpretation fits logically and dovetails with the
> Completed-Operations hazard, which applies to injuries
> or damage that occur away from the insured premises
> after the insured's operations are "deemed completed."

Resp't's Obj. (doc. no. 46), at 16.  The insurers are correct in
arguing that it would be logical to construe the policy as
establishing two mutually exclusive coverages, one for premises-
operations hazards, and one for completed-operations hazards.
But, again, there is no support in the policy language for the

distinction the insurers draw between injuries occurring on the insured premises and those occurring elsewhere.

It is also logical, however, to construe the policy as establishing overlapping coverages that would provide $2 million to satisfy a claim arising out of a premises-operations hazard that results in injuries on the insured's premises and a total of $3 million to satisfy a claim arising out of a premises-operations hazard that has ripened into a completed-operations hazard by virtue of an operation conducted on DAE's premises that results in injuries elsewhere.  The logic behind the concept of overlapping coverage is reinforced by the common-sense proposition that when DAE turns a plane over to its owner, i.e., once its operations become complete, the amount of liability to which it could be exposed would increase rather than decrease.  Of course, in the face of two reasonable interpretations, the court is compelled to adopt the one that favors coverage.  See MacLearn, 163 N.H. at 244.  Thus, the arguments advanced in Dolan's letter and the insurers' objection to Cardelli's motion for summary judgment are unavailing.

Perhaps in recognition of the need to support their argument with language from the policy, the insurers take a different tack in their own motion for summary judgment.  For the proposition that completed-operations insurance provides the only coverage available to DAE, the insurers rely on an

endorsement titled "Other Premises Exclusion" that provides, in

pertinent part:

> This insurance does not apply to "damages" because of
> "bodily injury" or "property damage" included within
> the "completed operations hazard" or included within
> the "products hazard" unless the operations or
> products are described in the schedule under hazards
> (d) and (e) – completed operations or products.

Id. at 12.  Based on the foregoing language, the insurers mount

the following argument:

> Per the exclusion, when the definition of "completed
> operations hazard" is applicable to a loss, the
> insurance does not apply to damages or injury included
> within any of the other hazards described in the
> policy schedule, such as those under "(a) Premises –
> Operations." (Ex. E at 5) Therefore, DAE's (and
> Cardelli's) suggestion that the $2 Million Dollar
> limit per occurrence which applies by endorsement
> "[o]nly with respect to (a) Premises – Operations . .
> . AS SET FORTH ON AP5 under the description of
> hazards" is a red herring where, as here, the
> completed operations hazard, as discussed below, is
> triggered.

Resp't's Mem. of Law (doc. no. 51), at 13 (footnotes omitted).

In other words, the insurers construe the "Other Premises

Exclusion" on which they rely as an anti-stacking provision.

They are mistaken.

"Stacking is where a claimant adds all available policies

together to create a greater pool in order to satisfy his actual

damages."  State Farm Mut. Auto. Ins. Co. v. Holyoke Mut. Ins.

Co., 150 N.H. 527, 529 (2004) (quoting Cardin v. Royal Ins. Co.

of Am., 476 N.E.2d 200, 204 n.7 (Mass. 1985)).  The concept of

stacking also applies where, as here, a single policy provides multiple coverages.  See Brouillard v. Prudential Prop. & Cas. Ins. Co., 141 N.H. 710, 712 (1997) (citing United Servs. Auto. Ass'n v. Wilkinson, 132 N.H. 439, 443 (1989)).  In New Hampshire, the principles of law governing the interpretation of insurance policy language "will generally authorize stacking unless the policy prohibits it through clear and unambiguous policy language."  Concord Gen. Mut. Ins. Co. v. Mitchell, 138 N.H. 229, 231 (1994) (citing Cacavas v. Me. Bonding & Cas. Co., 128 N.H. 204, 207 (1986)).  That is, "[i]n construing insurance policy language which purports to limit liability or prevent stacking, [the New Hampshire Supreme Court] employ[s] a strict construction standard which requires that ambiguities in insurance policies be construed in favor of the insured and against the insurer."  State Farm, 150 N.H. at 529 (quoting Brouillard, 141 N.H. at 712).

The problem with the insurers' argument is that the exclusion on which they rely says nothing about whether the same loss may be covered by both premises-operations insurance and completed-operations insurance.  In other words, it says nothing about stacking.  Rather, the language on which the insurers rely simply says that for completed-operations or products coverage to be available, the policy must specify the particular

operations or products to which it applies.[4]   In short, the
provision on which the insurers rely falls far short of being
clear and unambiguous anti-stacking language.

On the other hand, DAE and Cardelli argue that the policy
permits premises-operations coverage and completed-operations
coverage to be stacked.  In so arguing, they point to an
endorsement titled "Additional Exclusions."  That endorsement
lists four exclusions, and indicates that "only such of the
following Exclusion(s) opposite which an "X" has been placed
shall apply to the insurance afforded under the policy to which
this endorsement is attached."  Resp't's Mot. Summ. J., Ex. E
(doc. no. 37-4), at 11.  An elevator exclusion and an
independent-contractor exclusion are marked as applying to the
policy, but there is no "X" to indicate that the policy is
subject to the following exclusion:

> COMPLETED OPERATIONS EXCLUSION
> It is agreed that the Comprehensive General Liability
> Insurance – Coverage Part or the Completed Operations
> and Products Liability Insurance – Coverage Part (to
> whichever one this endorsement is attached) does not
> apply to "bodily injury" or "property damage" included
> within the "completed operations hazard".

Id.

---

[4] No party argues that the policy does not specify the
operations and products to which completed-operations and
products coverage applies, and, indeed, the policy does satisfy
the requirement stated in the exclusion.

If the "Completed Operations Exclusion" had been marked,
and the "Additional Exclusions" endorsement containing that
exclusion had been attached to the Comprehensive General
Liability Insurance – Coverage Part, i.e., the part of the
policy providing premises-operations coverage, then, Old
Republic would be on solid ground in arguing that completed-
operations coverage and premises-operations are mutually
exclusive.  But, the policy does not include the exclusion
quoted above, even though Old Republic could have chosen to
include it.  Thus, the policy contains affirmative evidence that
Old Republic intended to allow the stacking of premises-
operations coverage and completed-operations coverage.

The policy provides yet more evidence to support the
conclusion that Old Republic intended to allow the stacking of
those two coverages.  The single-limit endorsement for the
completed-operations (repair) and products (other than
petroleum) coverages, each of which has a liability limit of $1
million, also includes a provision capping the total combined
liability for those two hazards at $1 million.  The single-limit
endorsement for the completed-operations (petroleum only) and
products (petroleum only) coverages includes a similar
provision.  Yet, neither endorsement coordinates the liability
limit for the completed-operations coverages with that for
premises-operations coverage.  Similarly, the single-limit

27

endorsement for premises-operations coverage contains no
language coordinating the liability limit for that coverage with
the liability limits for the completed operations coverages.
Thus, it seems fairly clear that the policy contemplates the
possibility of providing DAE with $2 million in coverage for
liability arising from a premises-operations hazard and an
additional $1 million in coverage for the same loss, so long as
it also arose from a completed-operations hazard.

Thus, the court construes the policy as providing up to $2
million in coverage for bodily injury and property damage
resulting from DAE's aviation operations when the operation at
issue remains incomplete, and as providing an additional $1
million in coverage once the operation has been completed and
the injury occurs away from DAE's insured premises.  Having
resolved the issue of overlapping coverages, the court considers
each of those two relevant coverages individually.

D. Premises-Operations Coverage

In their motion for summary judgment, the insurers argue
that premises-operations coverage is necessarily precluded by
the availability of completed-operations coverage.  Seemingly
for that reason, they say nothing about whether the loss claimed
in this case falls within the language of the premises-
operations hazard.  Given the court's resolution of the stacking

28

issue, the insurers have, necessarily, failed to carry their
burden of proving that premises-operations coverage is not
available to DAE.

Moreover, even if the insurers had argued that the loss in
this case falls outside the premises-operations hazard, that
argument would fail.  In its motion for summary judgment, DAE
argues that "as long as [its] 'operations' occurred on the
insured premises, the Premises – Operations hazard necessarily
includes crashes/injuries that occur away from the insured
premises."  Pet'r's Mem. of Law (doc. no. 50-1), at 15.
Cardelli argues that: (1) the "natural and ordinary meaning" of
the language used to describe the premises-operations hazard
favors coverage; (2) the language used to describe the premises-
operations hazard is ambiguous and must be construed in favor of
coverage; and (3) even if her injury falls within a completed-
operations hazard, it also falls within the premises-operations
hazard, because she has alleged multiple negligent acts falling
within separate hazards.

The policy describes the premises-operations hazard to be
the "Named Insured's aviation operations located at Laconia
Municipal Airport . . . ."  Resp't's Mot. Summ. J., Ex. E (doc.
no. 37-4), at 5.  It is difficult to see how the inspection and
repair of an airplane could be anything other than one of DAE's
aviation operations at Laconia Airport.  Accordingly, the court

declares that the loss in this case was caused by a premises-
operations hazard.

### E. Completed-Operations Coverage

In his letter to Cardelli's counsel, Phoenix's Patrick
Dolan also stated Phoenix's position that DAE is entitled to
completed-operations (repair) coverage rather than completed-
operations (petroleum only) coverage.  In its petition, DAE asks
the court to declare that the $100,000-per-person limit on
damages for bodily injury resulting from completed-operations
(repair) should not apply because the policy's definition of
"'Completed Operations hazard' . . . as applied to the
circumstances of this case is ambiguous and should be construed
in favor of greater coverage for DAE Aviation."  First Rev. Pet.
(doc. no. 63) ¶ 49.

In its memorandum of law, DAE shifts its position a bit,
arguing the policy's ambiguity lies not in its definition of
"completed operations hazard," but, rather, in its lack of
guidance regarding how to distinguish between the two different
completed-operations hazards, i.e., the one involving petroleum
only and the one involving repairs.  DAE further argues that
because it is undisputed that the accident in this case was
caused by an oil leak that would have been detected by an engine
run-up, which is a required part of any oil change, the accident

falls within the completed-operations (petroleum only) hazard.
The insurers argue that the $100,000-per-person limit applies
because DAE performed a wide range of repairs and services on
Cardelli's plane, and the $1-million-per-person limit is
available, under the plain language of the policy, "when the
loss involves 'servicing of fuel, oil and other petroleum
products only.'"  Resp't's Mem. of Law (doc. no. 51), at 22.

There is an ambiguity in the description of the completed-
operations hazard.  As noted, it refers to two separate hazards:
(1) "Aircraft Repairs & Services," Resp't's Mem. of Law, Ex. E
(doc. no. 37-4), at 5; and (2) "Servicing of Fuel, Oil and Other
Petroleum Products Only," id.  The ambiguity is this: the
description of the petroleum-only completed-operations hazard
could be read, reasonably, as making coverage for that hazard
available when servicing of fuel, oil, and other petroleum
products is the only service performed by an insured, but that
description can also be read, reasonably, as making that
coverage available when, among the services provided by an
insured, the servicing of fuel, oil, and other petroleum
products by the insured is the only service that caused the loss
for which the insured has claimed coverage.

The former construction favors the insurers, while the
latter construction favors DAE and Cardelli.  Yet, the insurers
themselves appear to embrace the former construction when they

argue that the "limit referred to in this provision [_i.e._, the $1-million-per-person limit] is only applicable <u>when the loss</u> involves 'servicing of fuel, oil and other petroleum products only.'"  Resp't's Mem. of Law (doc. no. 51), at 22 (emphasis added).

To be sure, Cardelli alleges that DAE did more to her husband's plane than service its fuel, oil, and other petroleum products.[5]  But, she does not allege, nor does any other party claim, that her loss resulted from anything other than her husband's plane's complete lack of engine oil shortly after take-off which, necessarily, resulted from faulty servicing of oil, and the associated testing and reporting of that service work.[6]

The insurers argue that "where, as here, the operations out of which the claimed loss is alleged to have arisen entail activities other than <u>only</u> 'servicing of fuel, oil and other petroleum products,' the $1,000,000 limit for 'Completed Operations Hazard Servicing of Fuel, Oil and Other Petroleum

---

[5] She also makes that point in her memorandum of law, <u>see</u> doc. no. 35, at 23, but she does so in support of her argument that DAE is also entitled to premises-operations coverage, not in support of the proposition that DAE is not entitled to completed-operations (petroleum only) coverage.

[6] As the court has already noted, the policy's definition of the completed-operations hazard encompasses both the operations themselves and any "representation or warranty made at any time with respect thereto."  Resp't's Mot. Summ. J., Ex. E (doc. no. 37-4), at 44.

Products Only' plainly does not apply."  Resp't's Mem. of Law
(doc. no. 51), at 23-24 (emphasis added).  If the claimed losses
were alleged to have arisen from activities other than the
servicing of petroleum products, then the insurer's arguments
might be persuasive.  But, while the insurers identify various
other services DAE performed, such as inspecting the airframe,
performing a stress test, and replacing the plane's windshield,
see id. at 22, they do not argue that the claimed loss in this
case resulted from any of those repairs, nor do they argue that
any other party alleges that the claimed losses resulted from
activities other than the servicing of petroleum products and
the requisite testing and reporting of those services.  Thus,
under the insurers' own construction of the policy's description
of the completed-operations (petroleum only) hazard, the loss in
this case was also caused by a completed-operations (petroleum
only) hazard.

### Conclusion

     For the reasons described above, Cardelli's motion for
summary judgment (doc. no. 35), DAE's motion for summary
judgment (doc. no. 50), and the insurers' motion for summary
judgment (doc. no. 51) are all granted in part and denied in
part.  More specifically, the court declares that DAE is
entitled to up to $3 million in coverage for Cardelli's claim,

which represents the policy limit on premises-operations

coverage combined with the policy limit on completed operations

(petroleum only) coverage.

All that remains of this case is Count II, DAE's negligence

claim against Nationair.  While the vitality of that claim

appears to be substantially diminished by some of the rulings

contained in this order, that is a question for another day.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge


August 31, 2012

cc:   Scott Douglas Burke, Esq.
      Paul M. Koziell, Esq.
      Garry R. Lane, Esq.
      Robert T. Norton, Esq.
      Tory A. Wiegand, Esq.